IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RAYMOND A. LONG, M.D.,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| vs. : | NO. 1:07-MC-00035-RCL |
| : | |
| **TRIAD HOSPITALS, INC.;** : | |
| **QUORUM HEALTH RESOURCES, L.L.C.;** : | |
| **NORTHWESTERN MEDICAL CENTER, INC.;** : | |
| **PETER A. HOFSTETTER;** : | |
| **JACQUES M. ARCHAMBAULT, M.D.;** : | |
| **MICHAEL BURFOOT, B.M., B.Ch.;** : | |
| **JOSEPH SALOMONE, M.D.;** : | |
| **JAMES DUNCAN, M.D., and** : | |
| **STEPHEN MASON, M.D.,** : | |
| : | |
| **Defendants** : | |

## PETER HOFSTETTER'S REPLY IN SUPPORT OF HIS
## MOTION TO QUASH PLAINTIFF'S SUBPOENA DUCES TECUM

Movant Peter A. Hofstetter, one of the defendants in the underlying action, is seeking to keep his thirty-year-old academic records private. Raymond A. Long, the plaintiff in the underlying antitrust action pending in Vermont, insists he has the right to review Hofstetter's educational records. Nothing in the records supports Long's fanciful allegations. Long has refused to accept reasonable compromises that would satisfy him that the records will be of no help to him in his case.

Long's case against Hofstetter and others alleges that the defendants violated the antitrust laws and committed other torts in connection with a review of Long's medical staff privileges at Northwestern Medical Center in St. Albans, Vermont. Hofstetter is Northwestern's CEO. He is not a physician and not a biologist; he is an accomplished hospital administrator. Long received provisional staff privileges and, later, full staff privileges at Northwestern in accordance with the

- 1 -

by-laws and procedures of Northwestern's medical staff.  He was never denied privileges, although his period of provisional privileges was extended before he finally received full active privileges.  Long ultimately resigned those privileges while an inquiry was pending.  As Long's complaint reveals, however, Long was such a troubled man that his colleagues urged him to seek psychiatric care (see, *e.g.*, Complaint, para. 436 [Motion to Quash, Exhibit A, p. 63]).  Instead of seeking that much needed care, Long lashed out, blaming his colleagues, some of whom are also defendants in the action, and Hofstetter, for his own failings.

Long's Answer to Hofstetter's Motion to Quash asserts that records of Hofstetter's education at American University are relevant to two sets of issues in Long's complaint.  First, Long asserts the records are relevant to whether Hofstetter has "propensities . . . for wrongful, illegal, destructive, vengeful and malicious action."  Long asserts that Hofstetter's employer[1] negligently hired him because it knew or should have known about those alleged propensities.  Long has offered no reason for his belief that Hofstetter's American University records support such allegations.  Second, Long's complaint describes a series of surgeries that he performed that resulted in serious post-operative infections.  Long apparently believes that whether Hofstetter's coursework included "microbiology, the study of microbe cultures, sterility and microbial contamination" is somehow relevant because he believes that Hofstetter's behavior should have been studied by "psychiatric experts specializing in corporate psycho-pathology" "as part of a root cause analysis of the surgical infections and contaminated irrigation fluid."  As it happens, Hofstetter studied biology, business and hospital management, not microbiology or microbial contamination.

---

[1] One of the issues in the underlying case in Vermont is whether Hofstetter is employed by defendant Quorum Health Resources LLC or, as Long insists, Quorum's corporate parent defendant Triad Hospitals, Inc.  For the purposes of this motion, the identity of Hofstetter's employer is irrelevant.

W AE 145506 v2
2823412-000021 2/9/2007

Hofstetter's record at American University offers no support for Long's fanciful theories. Hofstetter has offered, through counsel, to satisfy the subpoena and avoid or dismiss the motion to quash in two ways. First he offered to provide to Long appropriate certification that Hofstetter did in fact receive the degrees from American University that he claims to have received. After Long rejected this offer, Hofstetter made a second attempt to compromise: Hofstetter offered to permit Long's counsel to review American University's records for counsel's eyes only so that counsel may satisfy himself that the records are not relevant to any of the allegations in Long's complaint. Long's rejection of this second offer is baffling: if, after review of the records Long's counsel believed the records were indeed relevant to the complaint, he could still seek to enforce the subpoena.

The Federal Rules of Civil Procedure allow parties to seek discovery regarding "any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Federal Rules of Evidence define relevant evidence as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed R. Evid. 401. A party seeking discovery must show how the records sought would be relevant to the litigation. *Washington v. Thurgood Marshall Academy*, 232 F.R.D. 6, 11 (D.D.C. 2005) (prohibiting discovery of records whose relevance plaintiff had failed to show). Long has failed to show how thirty-year-old academic records might shed light on whether Hofstetter has a propensity for illegal or malicious action or how the courses he took indicate whether he contaminated surgical supplies.

- 3 -

Long's subpoena demands not just academic transcripts, but nearly every piece of information that American University might have regarding Hofstetter. Congress has determined that records of educational institutions that receive federal funds, such as American University, are entitled to special protections to ensure the privacy of students' records. 20 U.S.C. § 1232g(b). Release of such records is generally prohibited except with the approval of the student. Of course, universities may be required to comply with a valid subpoena, 20 U.S.C. § 1232g(b)(2)(B), but courts reviewing such subpoenas typically impose significant restrictions on access to and use of the records. *See, e.g.*, *Rios v. Read*, 73 F.R.D. 589, 602 (E.D.N.Y. 1977) (requiring destruction of documents after review). Limiting subpoenas "to restrict their scope to material that pertains to the acts specified in the complaint" is appropriate. *Chazin v. Lieberman*, 129 F.R.D. 97 (S.D.N.Y. 1990).

Because of the protections given to educational records, Hofstetter's employer could not have obtained information about any alleged propensity for illegal or vindictive behavior without a subpoena. And without any reason to ask Hofstetter to waive his privacy rights in those records (except perhaps to confirm the award of Hofstetter's academic degrees), Hofstetter's employer would have been completely ignorant of the information Long hopes to find there. Long cannot show, therefore, that Hofstetter's employer could have obtained the records, nor that his employer should have obtained the records. Thus, whatever the records contain, the information cannot form the basis for a claim of negligent hiring.

Long cannot point to a single fact he expects to learn from the requested documents that would be helpful to his case. Even if there is evidence of, say, vindictiveness, Hofstetter's employer cannot reasonably have been expected to have learned it. Even if he did take a course in microbiology, the fact that Hofstetter knew something about microbiology in the early 1970s

has no bearing on whether he played a role in contaminating irrigation solution used in surgery thirty years later.  As a medical doctor and trained surgeon, Long had much more formal education in how to maintain a sterile field in an operating room and in the dangers of particular bacteria, knowledge and skills that a practicing surgeon needs to keep current.  That fact does not help establish, for example, that Long deliberately contaminated his own surgery.

Long's subpoena is nothing more than a fishing expedition with no clear object in mind.  This Court has previously stated that it would not permit a "fishing expedition based on sheer speculation." *United States v. Philip Morris Inc.,* 312 F. Supp. 2d 27, 36 (D.D.C. 2004).  Long makes many allegations in his complaint, but not a single one would be supported by any information conceivably available in the records he is seeking.

The notion that the Plaintiff does not actually expect to find useable information in the American University records is supported by his refusal to accept Hofstetter's second offer of compromise.  Allowing Long's counsel to review the records to see for himself that they are devoid of any information helpful to Long's complaint should set this matter to rest without extended litigation.  Instead of accepting the offer, Long insists not only that he enforce the subpoena seeking every record American University has relating to Hofstetter, but also demands sanctions.  If Long genuinely expected to gain useable information from the records, it is difficult to imagine any possible reason he could have for rejecting the offered compromise except that the subpoena itself is nothing more than a fishing expedition designed to harass Hofstetter.

**Conclusion**

Long's subpoena is overbroad and seeks irrelevant information that is highly confidential and personal, and is in fact protected from disclosure by federal law.  Long has not and cannot

state a coherent, legally adequate reason for obtaining access to these documents. Long has no legitimate interest in these documents, and American University should not be forced to provide them to Long over Hofstetter's objections. Defendant Hofstetter therefore respectfully requests that the Court enter an order quashing Long's subpoena duces tecum.

Dated: February 9, 2007             Respectfully Submitted,

                                    Peter A. Hofstetter

                                    By his Attorneys


                                    _____/s/_____
                                    Phillip C. Zane
                                    (Bar No. 452939

                                    Robert E. Hauberg, Jr.
                                    Phillip C. Zane
                                    BAKER, DONELSON, BEARMAN, CALDWELL
                                    & BERKOWITZ, P.C.
                                    Lincoln Square
                                    555 Eleventh St., NW, 6th Floor
                                    Washington, D.C. 20004
                                    Telephone: (202) 508-3400
                                    E-mail: rhauberg@bakerdonelson.com
                                    E-mail: pzane@bakerdonelson.com

## CERTIFICATE OF SERVICE

      I hereby certify that, on this 9th day of February, 2007, I sent the foregoing pleading by overnight courier and electronic mail to the parties listed below:

**Lloyd George Parry, Esq.**
lgparry@dpt-law.com
Davis, Parry & Tyler, P.C.
1525 Locust Street, 14th Floor
Philadelphia, PA 19102-3732
*Attorneys for Plaintiff*

**R. Jeffrey Behm, Esq.**
jbehm@sheeheyvt.com
**Ian P. Carleton, Esq.**
icarleton@sheeheyvt.com
Sheehey, Furlong & Behm, P.C.
Gateway Square, 30 Main Street
Burlington, VT 05402
*Attorneys for Defendants
Jacques M. Archambualt, M.D. and
Michael Burfoot, B.M., B. Ch.*

**Mark L. Mattioli, Esq.**
mmattioli@postschell.com
**Brian M. Peters, Esq.**
bpeters@postschell.com
**Kathleen M. Chancler, Esq**.
kchancler@postschell.com
Jonathan B. Sprague, Esq.
jsprague@postschell.com
Post & Schell, P.C.
Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103
*Attorneys for Defendant Northwestern
Medical Center, Inc.*

**Gary D. McQuesten, Esq.**
gary@vdmlaw.com
Valsangiacomi, Detora & McQuesten, P.C.
172 N. Main Street
Barre, VT 05641-0625
*Attorneys for Plaintiff*

**Charles Harvey, Esq.**
harvey@harveyfrank.com
Harvey & Frank
Two City Center, 4th Floor
Portland, Maine 04112-0126
Attorneys for Defendants
*Jacques M. Archambualt, M.D.; Michael Burfoot,
B.M., B.Ch.; Stephen Mason, M.D.; and James
Duncan, M.D.*

**Joseph F. Cahill, Jr. Esq.**
joecahill@bcgm.net
Brown, Cahill, Gawne & Miller
42 N. Main Street
St. Albans, VT 05478
*Attorneys for Defendant
Northwestern Medical Center, Inc.*

**Michael Honeycutt**
Assistant Registrar
**American University**
Registrar's Office
4400 Massachusetts Ave., NW
Asbury Building, Room 200
Washington, DC 20016-8064

                                       /s/
                            Phillip C. Zane
                            BAKER, DONELSON, BEARMAN, CALDWELL
                            & BERKOWITZ, P.C.
                            Lincoln Square
                            555 Eleventh St., NW, 6th Floor
                            Washington, DC 20004
                            Telephone: (202) 508-3400
                            E-mail: pzane@bakerdonelson.com

W AE 145506 v2
2823412-000021 2/9/2007